IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-107

 No. 39A21

 Filed 24 September 2021

 IN THE MATTER OF: J.D.D.J.C., J.D.R.D.C.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 9

 October 2020 by Judge Micah J. Sanderson in District Court, Cleveland County. This

 matter was calendared in the Supreme Court on 19 August 2021, but was determined

 on the record and briefs without oral argument pursuant to Rule 30(f) of the North

 Carolina Rules of Appellate Procedure.

 Charles E. Wilson, Jr., for petitioner-appellee Cleveland County Department of
 Social Services.

 Stacy S. Little for appellee Guardian ad Litem.

 J. Thomas Diepenbrock for respondent-appellant mother.

 PER CURIAM.

¶1 Respondent-mother Sherry C. appeals from an order entered by the trial court

 terminating her parental rights in her minor children, J.D.D.J.C. and J.D.R.D.C.1

 Counsel for respondent-mother has filed a no-merit brief on respondent-mother’s

 1 J.D.D.J.C. and J.D.R.D.C. will be referred to through the remainder of this opinion

 as Joshua and Jolene, respectively, which are pseudonyms used for ease of reading and to
 protect the juveniles’ privacy.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

 behalf as authorized by N.C.R. App. P. 3.1(e). After careful consideration of the record

 in light of the applicable law, we affirm the trial court’s termination order.

¶2 On 13 October 2011, the Cleveland County Department of Social Services filed

 a petition alleging that three-month-old Joshua, two-year-old Jolene, and their older

 half-siblings, eleven-year-old Sally and sixteen-year-old Henry, were neglected

 juveniles2 and obtained the entry of an order placing Jolene, Sally, and Henry in

 nonsecure custody.3 On 13 July 2012, Judge Meredith A. Shuford entered an order

 finding that Joshua and Jolene were neglected juveniles “in that they live in an

 environment injurious to their welfare and do not receive proper care or supervision

 and have not been provided necessary medical care, based upon [respondent-

 mother’s] untreated mental illness and failure to comply with recommended

 treatment for [Henry].”

¶3 In support of this determination, Judge Shuford found that DSS had received

 reports concerning respondent-mother’s untreated mental illness and had offered to

 provide respondent-mother with assistance as far back as 1999 and that Sally and

 Henry had been placed in DSS custody in 2001. In addition, Judge Shuford found

 2 Sally and Henry are also pseudonyms used for ease of reading and to protect the

 identity of the juveniles and their siblings.
 3 DSS refrained from seeking to obtain nonsecure custody of Joshua at that time given

 that he was residing with his father. As a result of the fact paternity testing showed that
 Joshua and Jolene had the same father, Judge Larry J. Wilson subsequently sanctioned
 Jolene’s placement in the father’s home with Joshua.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

 that, while the family was receiving “Intensive In-Home Family Preservation”

 services, DSS had received child protective services reports in August and September

 2011 that indicated that respondent-mother had physically abused the children, that

 the children were begging the neighbors for food, and that Sally was having to care

 for her siblings and further found that Henry had disclosed that he had thought of

 killing himself or respondent-mother at a Child and Family Team meeting held on 28

 September 2011.

¶4 Judge Shuford also found that respondent-mother had refused to comply with

 recommendations that Henry receive a psychological evaluation and enter a

 therapeutic foster placement and the recommendation that she should seek mental

 health treatment for herself. According to Judge Shuford, two days after the 28

 September 2011 meeting, DSS had been called to respondent-mother’s home, at

 which law enforcement officers and emergency medical service personnel were

 attempting to take Henry to the hospital because of his continued suicidal ideation

 and homicidal threats. Judge Shuford determined that respondent-mother had

 initially refused to sign a release authorizing Henry’s hospitalization before changing

 her mind. Although Henry was involuntarily committed for mental health treatment,

 Judge Shuford found that, following Henry’s discharge, respondent-mother refused

 to allow Henry to be placed in a leveled mental health or therapeutic placement, an

 action that prompted DSS to seek relief through the judicial system.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

¶5 In addition, Judge Shuford found that respondent-mother had submitted to a

 psychological evaluation in January 2012 and had been diagnosed as suffering from

 mood disorder, post-traumatic stress disorder, borderline personality disorder, and

 paranoid personality disorder; that respondent-mother had consistently failed or

 refused to comply with recommended and necessary mental health treatment for the

 past decade; and that the children had experienced negative effects as the result of

 respondent-mother’s mental health condition and her failures to obtain treatment.

 Finally, Judge Shuford found that respondent-mother had consistently refused to

 attend Child Family Team meetings with DSS since October 2011.

¶6 After having determined that the children were neglected juveniles, Judge

 Shuford awarded custody of Joshua and Jolene to the father Tracy H., while

 authorizing respondent-mother to have one hour of supervised visitation with the

 children each week. Judge Shuford retained jurisdiction over Joshua and Jolene for

 the purpose of supervising visitation-related issues and ordered respondent-mother

 to comply with recommended mental health treatment, including participation in

 individual counseling and medication management, and to sign releases authorizing

 the release of treatment-related information to DSS. After a review hearing held on

 7 November 2012, Judge Anna F. Foster entered an order on 19 November 2012

 waiving the necessity for further review hearings relating to Joshua and Jolene.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

¶7 On 23 October 2013, DSS obtained the entry of orders placing Joshua and

 Jolene in nonsecure custody and filed a petition alleging that Joshua and Jolene had

 been abused and neglected while in the custody of their father. On 11 April 2014,

 Judge Shuford entered an order finding that Joshua and Jolene were abused and

 neglected juveniles based upon findings that the children had been exposed to a

 substantial risk of injury when the father had left them at night without proper

 supervision in a padlocked room in which various pills and a knife were present; that

 the father’s home was in substandard condition; and that, even though respondent-

 mother did not have custody of the children, Joshua and Jolene had previously been

 adjudicated neglected and respondent-mother had failed to sufficiently comply with

 court-ordered treatment so as to preclude their return to her custody. As a result,

 Judge Shuford ordered that the children remain in DSS custody and awarded the

 parents a minimum of one hour of supervised visitation each week. In addition,

 Judge Shuford ordered the parents to take appropriate measures to facilitate the

 children’s return to parental custody, with respondent-mother having been ordered

 to comply with all recommendations for mental health and psychiatric treatment and

 to sign releases authorizing DSS to obtain access to information relating to the

 progress that she had made in the course of her treatment; to obtain a parental fitness

 evaluation and comply with any resulting treatment recommendations; and to
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

 establish and maintain clean, safe, and stable housing and sufficient income for

 herself and the children.

¶8 In an order entered on 15 October 2014 after a review and permanency

 planning hearing held on 1 October 2014, Judge Jeannette R. Reeves found that

 respondent-mother had failed to consistently attend mental health treatment; that,

 even though she had obtained a parental fitness evaluation and completed parenting

 classes, she had failed to demonstrate that she had made any progress toward

 improving her parenting skills and had made statements to the effect that she did

 not intend to change the manner in which she parented her children. In addition,

 Judge Reeves found that respondent-mother continued to live in a home that was

 “essentially uninhabitable” and that she had recently given birth to her seventh child,

 who had been taken into nonsecure custody by DSS. Based upon these findings,

 Judge Reeves determined that continued efforts to reunify the children with

 respondent-mother would be futile and relieved DSS of the necessity for attempting

 to facilitate such a result. On the other hand, however, Judge Reeves ordered that

 DSS continue to attempt to reunify the children with the father, who had made

 significant progress toward addressing the conditions that had led to the children’s

 removal from his home, and established a primary permanent plan for the children

 of reunification with the father while continuing to sanction weekly visits between

 respondent-mother and the children.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

¶9 After a review and permanency planning hearing held on 20 January 2016,

 Judge Ali Paksoy entered an order returning custody of the children to the father.

 Although respondent-mother requested that she be allowed unsupervised visitation

 with the children on the grounds that she had made improvements to her home and

 had complied with the requirements that had previously been imposed upon her,

 Judge Paksoy determined that respondent-mother had failed to produce any evidence

 to support her claims, continued to authorize weekly supervised visitation between

 respondent-mother and the children, and waived the necessity for further review

 hearings involving Joshua and Jolene.

¶ 10 On 27 June 2018, DSS filed yet another juvenile petition alleging that Joshua

 and Jolene were abused and neglected juveniles. In this petition, DSS alleged that it

 had received a request for assistance from the Cleveland County Sheriff’s Office on

 26 June 2018 predicated upon the fact that the father had been arrested on the basis

 of Jolene’s claims that the father had sexually abused her and the fact that the

 father’s girlfriend had admitted that she had enabled the father’s abuse of Jolene and

 that she had used methamphetamine with the father. In view of the fact that the

 children had no appropriate alternative caregivers, DSS obtained nonsecure custody

 of both children.

¶ 11 After a hearing held on 23 January 2019, the trial court entered an order on 6

 February 2019 finding that Joshua was a neglected juvenile and that Jolene was an
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

 abused and neglected juvenile. In light of those determinations, the trial court

 authorized the cessation of efforts to reunify the children with the father while

 ordering DSS to attempt to reunify Joshua and Jolene with respondent-mother, with

 this requirement resting upon findings that respondent-mother was employed as a

 long-distance truck driver, that respondent-mother had admitted that she lacked safe

 and stable housing for herself and the children, and that respondent-mother had

 continued to deny that she needed to participate in mental health treatment. After

 authorizing weekly supervised visitation between respondent-mother and the

 children, the trial court ordered respondent-mother to obtain a psychological and

 parental fitness evaluation, to comply with any treatment-related recommendations,

 and to sign releases authorizing the disclosure of information relating to her

 evaluation and treatment to DSS; to obtain a substance abuse assessment, comply

 with any treatment-related recommendations, and submit to random drug testing;

 and to establish and maintain clean, safe, and stable housing and demonstrate the

 ability to properly care for the children.

¶ 12 After a review and permanency planning hearing held on 13 February 2019,

 Judge Shuford entered an order on 19 February 2019 in which she found that, while

 respondent-mother had visited with the children, her contacts with them had

 occurred on an inconsistent basis because of the demands of her employment as a

 truck driver; that respondent-mother had failed to comply with the trial court’s prior
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

 dispositional order given the fact that she had not maintained safe and stable

 housing; that she continued to deny the need for the assessments and treatments in

 which she had been ordered to participate, and that she lacked a reliable plan of care

 for the children during times when she was scheduled to be out of town driving a

 truck given that her adult son, with whom she planned to leave the children, had a

 prior criminal record and child protective services history, was involved in an open

 child protective services matter, and had mental health problems of his own. After

 ordering that the children remain in DSS custody, Judge Shuford established a

 primary permanent plan for the children of reunification with respondent-mother

 along with a concurrent secondary plan of adoption.

¶ 13 Review and permanency planning hearings relating to Joshua and Jolene were

 held on 15 May 2019, 6 November 2019, and 6 May 2020. In orders entered by Judge

 Shuford on 3 June 2019, Judge K. Dean Black on 19 November 2019, and the trial

 court on 8 June 2020 in the aftermath of these proceedings, these three judges

 repeatedly found that respondent-mother had failed to visit with the children

 consistently; that respondent-mother had refused to meet with DSS for the purpose

 of developing a case or a visitation plan; that respondent-mother had been

 uncooperative and argumentative with DSS during the course of its attempts to

 schedule visitation sessions between respondent-mother and the children and to

 arrange for various services for respondent-mother; that, even though she had
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

 completed a comprehensive clinical assessment, respondent-mother had failed to

 comply with the resulting treatment recommendations on the basis of her continued

 insistence that she did not need the recommended psychiatric evaluation, medication

 management services, or mental health treatment; and that respondent-mother had

 failed to establish or maintain safe and stable housing and had not cooperated with

 the efforts that DSS had made to schedule a home visit.

¶ 14 In the 3 June 2019 order, Judge Shuford changed the permanent plan for the

 children to a primary plan of adoption with a concurrent secondary plan of

 reunification with respondent-mother. In the 19 November 2019 order, however,

 Judge Black changed Jolene’s permanent plan to one of reunification with

 respondent-mother and a secondary plan of adoption in light of Jolene’s need for a

 therapeutic placement. In the 8 June 2020 order, the trial court changed Jolene’s

 permanent plan back to a primary plan of adoption after a potential permanent

 placement with a foster parent who was pursuing therapeutic foster home licensure

 had been identified.

¶ 15 On 18 February 2020, DSS filed petitions seeking to have respondent-mother’s

 parental rights in Joshua and Jolene terminated on the basis of neglect, N.C.G.S.

 § 7B-1111(a)(1); willful failure to make reasonable progress toward correcting the

 conditions that had resulted in the children’s removal from the family home, N.C.G.S.

 § 7B-1111(a)(2); dependency, N.C.G.S. § 7B-1111(a)(6); and the fact that respondent-
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

mother’s parental rights in another child had been involuntarily terminated and

respondent-mother lacked the ability or willingness to establish a safe home,

N.C.G.S. § 7B-1111(a)(9). After electing to hear and decide the case involving

respondent-mother separately from a similar termination of parental rights

proceeding directed towards the father,4 the trial court held a hearing for the purpose

of considering the merits of the termination petition on 2 and 9 September 2020. On

9 October 2020, the trial court entered an order determining that respondent-

mother’s parental rights in the children were subject to termination on the basis of

all four grounds for termination set forth in the termination petition, that the

termination of respondent-mother’s parental rights would be in the children’s best

interests, and that respondent-mother’s parental rights in Joshua and Jolene should

be terminated. Respondent-mother noted an appeal to this Court from the trial

court’s termination order.

 4 At the same time that it sought to have respondent-mother’s parental rights in the

children terminated, DSS filed a petition seeking to have the father’s parental rights in
Joshua and Jolene terminated on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); failure to
make reasonable progress toward correcting the conditions that had led to the children’s
removal from the family home, N.C.G.S. § 7B-1111(a)(2); and dependency, N.C.G.S § 7B-
1111(a)(6). On 28 September 2020, the trial court entered an order finding that respondent-
father’s parental rights in the children were subject to termination on the basis of all three
of the grounds for termination alleged in the termination petition and that the termination
of respondent-father’s parental rights in Joshua and Jolene would be in the children’s best
interests. In view of the fact that the father did not note an appeal to this Court from the
trial court’s termination order, we will refrain from making any further comment about the
father’s situation in this opinion.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

¶ 16 As we have already pointed out, respondent-mother’s appellate counsel has

 filed a no-merit brief on her behalf pursuant to N.C. R. App. P. Rule 3.1(e). In this

 no-merit brief, appellate counsel identified certain issues relating to the adjudication

 and disposition portions of the termination proceeding that could arguably support

 an appeal, including whether the trial court had properly determined that

 respondent-mother’s parental rights were subject to termination and whether the

 trial court had abused its discretion by determining that the termination of

 respondent-mother’s parental rights would be in the children’s best interests before

 explaining why he believed that the issues that he had contemplated raising on

 respondent-mother’s behalf either lacked merit or would not justify a decision on the

 part of this Court to overturn the trial court’s termination order. 5 In addition,

 respondent-mother’s appellate counsel advised respondent-mother of her right to file

 pro se written arguments on her own behalf and provided her with the documents

 necessary to do so. Respondent-mother has not, however, submitted any written

 arguments for our consideration.

 5 According to respondent-mother’s appellate counsel, a meritorious argument can be

 made with respect to the lawfulness of the trial court’s determination that respondent-
 mother’s parental rights in the children were subject to termination on the basis of
 dependency, N.C.G.S. § 7B-1111(a)(6). On the other hand, however, respondent-mother’s
 appellate counsel acknowledges that a decision in respondent-mother’s favor with respect to
 this issue would not result in the invalidation of the trial court’s termination order given that
 the trial court need only find the existence of a single ground for termination in order to
 support the termination of that parent’s parental rights. See In re J.S., 377 N.C. 73, 2021-
 NCSC-28, ¶ 24.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

¶ 17 This Court independently reviews issues identified by appellate counsel in a

 no-merit brief filed pursuant to N.C.R. App. P. 3.1(e) for the purpose of determining

 whether they have potential merit. In re L.E.M., 372 N.C. 396, 402 (2019). After

 careful review of the issues identified in the no-merit brief filed by respondent-

 mother’s appellate counsel in light of the record and the applicable law, we are

 satisfied that the findings of fact set out in the 9 October 2020 termination order

 relating to the prior determinations that Joshua and Jolene were neglected juveniles,

 respondent-mother’s failure to participate in court-ordered mental health treatment,

 respondent-mother’s failure to maintain safe and appropriate housing, and the fact

 that respondent-mother’s parental rights in another child had been involuntarily

 terminated all had sufficient record support. In addition, we are satisfied that the

 trial court’s findings of fact support its determination that respondent-mother’s

 parental rights in Joshua and Jolene were subject to termination on the basis of at

 least one of the grounds delineated in N.C.G.S. § 7B-1111(a). Finally, we are satisfied

 that the trial court’s findings of fact address the dispositional issues delineated in

 N.C.G.S. § 7B-1111(a), that these dispositional findings have ample record support,

 and that these dispositional findings provide a rational basis for the trial court’s

 determination that the termination of respondent-mother’s parental rights in Joshua

 and Jolene would be in the children’s best interests. As a result, we affirm the trial

 court’s termination order.
 IN RE J.D.D.J.C., J.D.R.D.C.

 2021-NCSC-107

 Opinion of the Court

AFFIRMED.